THE STATE, JAMES T. SHERMAN AND WIFE, prosecutors,
vs. BENJAMIN K. McCLURG, Collector.

1. If more tax is assessed than is authorized by law, the assessment will not be void, but will be valid for what the law allows, and the excess only will be remitted.

2. If the common council of a city order more money to be raised by tax than the charter allows, and the assessor only assess the amount authorized by law, the assessment will be valid.

3. An affidavit setting forth that the deponent has no property in the ward subject to taxation, is sufficient and is conclusive, unless the contrary is shown by other evidence.

4. If an insufficient affidavit is presented to the commissioners of appeal, the party presenting it has a right to make an amended affidavit, and the commissioners are bound to receive it.

---

*Certiorari* in matter of taxation.

The following affidavits were presented to the commissioners of appeal. The commissioners refused to alter the assessment, and this *certiorari* was brought to set it aside:

Caroline H. Sherman, of full age, being duly sworn according to law, saith—that she is the wife of James T. Sherman, of the city of Trenton, and is a resident of the second ward of said city, that she is informed and believes that she and her said husband have been assessed in said ward the present year, for property supposed to be owned by her, to the extent of four hundred and twenty dollars; and she further saith that she and her said husband have not in their joint right, nor hath she in her own right, nor hath her said husband in right of her, his said wife, any estate, real or personal, in said ward; and at the time said assessment was made, she and her said husband had not in their joint right, nor had she in her own right, nor had her said husband in right of her, his said wife, any estate, real or personal, in said ward; and that they had not, when said assessment was

made, and have not now, jointly or separately, any property subject to assessment in right of this deponent, her husband, the said James T. Sherman, having been separately assessed, as she is informed and believes, for his individual estate.

James T. Sherman, of full age, alleging himself conscientiously scrupulous of taking an oath, and being duly affirmed according to law, saith—that he is a resident of the second ward of the city of Trenton, and that he has been duly assessed therein for his separate and individual estate the present year; and he further saith, in addition to said assessment, he is informed and believes that he and his wife Caroline (in right of his said wife) have been assessed for the present year, in said ward, the sum of four hundred and twenty dollars; and this affirmant further saith, that he and the said Caroline have not in their joint right, nor hath he in right of the said Caroline, nor hath the said Caroline in her own right, so far as he knows or believes, any estate, real or personal, in said ward, and that they have not, jointly or separately, any property subject to assessment, as last aforesaid; and this affirmant further saith that, at the time said assessment was made, he and the said Caroline had not, in their joint right, nor had he in right of the said Caroline, nor had the said Caroline in her own right, so far as he knows, any estate, real or personal, in said ward, and that they had not, when said assessment was made, jointly or separately, any property subject to assessment in right of said Caroline.

Argued at June Term, 1858, before Justices ELMER, POTTS, and VREDENBURGH.

*Gummere* and *W. L. Dayton*, for plaintiff in *certiorari*.

*E. W. Scudder*, for defendant.

ELMER, J. James T. Sherman, of the second ward of the city of Trenton, was assessed for his own property, and was also assessed for property stated to be held in right of his wife Caroline. From this last assessment an appeal was taken, and affidavits of Sherman and his wife were made before the commissioners, pursuant to the 11th section of the tax law of 1854. These affidavits set forth that he and his wife, Caroline had not then, or at the time of the assessment, in their joint right, nor had he, in right of his wife, nor had the said Caroline, in her own right, any estate, real or personal, in said ward, and that they had not, jointly or separately, any property subject to assessment as aforesaid. These affidavits were adjudged by the commissioners to be insufficient, and the tax was confirmed.

The 10th section of the tax law (*Nix. Dig.* 803) provides that if any person, whose real or personal estate is liable to taxation, shall make oath that the value of his real and personal estate, after deducting his debts due and owing, as before mentioned, does not exceed a certain sum, specifying the same, it shall be the duty of the assessor to value the same at the sum specified in the affidavit, and no more. Giving to this provision a reasonable interpretation, as we are bound to do, I am of opinion that the affidavits were a substantial compliance with the law. If there was no property subject to taxation, it was right to say so, and not to specify a nominal sum. Nor do I think they were open to the objection relied on, that they stated conclusions of law, and not facts. Unless the particulars of the property held are specified, which the law does not seem to contemplate, most affidavits would be liable to the same objection. The value of real and personal property, after deducting debts, means the value of that subject to taxation. If the person taxed has real estate in another ward, or personal property not subject to taxation, as often happens, he must necessarily exclude these from the valuation he swears to.

But, if the original affidavits be considered as insuffi-cient, it appears that afterwards, and before the commis-sioners of appeal had adjourned, but after they had voted to sustain the assessment, affidavits were tendered to them, which set forth that there was no personal estate what-ever, and no real estate in the ward, which are admitted to be correct, I am clearly of opinion that the commis-sioners erred in not receiving these affidavits and in not setting aside the assessment. There is no reason to sus-pect that they were not offered in perfect good faith. The counsel who appeared before the commissioners for Mr. Sherman testifies that he informed them that, if there was anything objectionable in the form of the first affidavits, and they would indicate what, he would have them amended at once; but no objection was stated, and they said they would lay the case over for consideration. It is impossible to read the minutes of the board, which have been laid before us, without perceiving that they considered it right to determine Mr. Sherman's case on the affidavits as first presented, and if possible to prevent any others from being offered.

In this, I think they erred. It is the duty of all judicial tribunals to regard the substance rather than the form. The law does not prescribe at what time the affidavits shall be presented; and although this court will un-doubtedly sustain the commissioners in enforcing rules which will tend to prevent unreasonable delay, I think it would only perpetuate injustice to sanction the proceeding adopted in this case. In my opinion, the assessment must be set aside.

Potts, J. The assessor of taxes for the second ward in the city of Trenton, in 1857, assessed against James T. Sher-man and Caroline, his wife, a tax of four hundred and twenty dollars, upon personal property assumed to be held by Mr. Sherman in right of his wife, to the amount of sixty thousand dollars, being seventy cents on every one hundred dollars.

The prosecutors, having brought this assessment up by *certiorari*, now ask that it may be set aside, on two grounds. They allege—1. That there was no legal assessment of taxes in that year in this city. 2. That even if the assessments were legal, this tax against the prosecutors was without authority, they having had at the time no personal property in right of said Caroline in said ward which was subject to taxation.

1. As to the first point, I am of opinion it is not well taken. By the charter of the city of Trenton, § 25, the taxes are to be assessed and collected in such manner as the common council shall by ordinance direct. By a supplement, the state, county, and city taxes are required to be assessed and collected together annually, at such times as the common council shall direct and appoint. The council are required to fix the amount to be raised, and by that the per cent. of tax on the ratables is determined by the assessors. This power of the common council, however, is limited. They cannot order more money to be raised than shall amount to seventy cents to every one hundred dollars in value of the taxable property of the citizen. *Pamph. L.* 1856, *p.* 278, § 2. The assessors are required by ordinance, on or before the *third* Monday of May, to take a true account, and make out an exact list of the persons, articles, and things within the city made ratable by law; and to meet on the *same day*, and then and there ascertain the amount of certainties required by law to be rated in the assessment to be made, and their value, and thereby to fix the proportion, or quota, of the tax to be levied and collected in each of the wards. And they are further required to have their duplicates completed on or before the *fourth* Monday in May. It was therefore the duty of the common council to determine the amount to be raised by tax in 1857, not exceeding in amount the limit of their lawful authority. That determination and order should have been made and furnished to the assessors on or before the third Monday, which was

the 18th of May, in order that the assessors might, in pursuance of the ordinance, make their estimates and complete their duplicates. The council omitted to do this until the twenty-second of May, and then ordered $58,372.18 to be raised, an amount which greatly exceeded the limit prescribed by law.

The assessors however, it would seem, considered the order good only for such sum as they might by law legally assess, and proceeded to complete and hand over their duplicates to the collectors, assessing the ratables at seventy cents on each one hundred dollars of value, reporting to the committee of council that the assessment would only produce $45,380.88. And after an abortive attempt to obtain the consent of the citizens to a greater tax, the council persisting in error to the last, on the twenty-third of June, made an order directing $46,969.81 to be raised, a sum still greater than the ratables would produce, to which order, however, it seems no attention was paid by the assessors or collectors.

The proceedings of the common council were certainly irregular. But it would be too strict to say that the order of the twenty-second of May was utterly illegal, and that therefore no tax at all could be assessed and collected under it. Though not made and furnished to the assessors on or before the eighteenth of May, it was made before they were by law required to complete and hand over their duplicates to the collectors, and may be considered as giving validity to the assessments; and although it ordered a greater tax to be assessed and collected than the charter permitted, yet, as the assessors in fact only assessed such amount of tax as the charter authorized, we ought not to subject the city to the disastrous consequences that might follow if we declared the whole proceedings illegal. We may. hold, without any violation of principle or disregard of authority, that an order of the common council to raise more money than the law allows is still valid for as much as the law does allow. If the as-

State v. McClurg.

sessors had, in obedience to the order, fixed the assessment higher than seventy cents on one hundred dollars, the only consequence would have been that this court would, on *certiorari*, have remitted the excess. The subsequent order of the common council, of the twenty-third of June, did not, in effect, rescind the first order; it only reduced the amount to a sum nearer the legal limits, and fortunately did no harm, if it did no good.

2. But, upon the second point taken, the assessment must be set aside. When the assessor called in May, 1857, to make his assessment, Mr. Sherman gave in a satisfactory account of his own real and personal property, and informed the assessor that he had no property in right of his wife that was assessable in the city of Trenton. No affidavit was demanded by the assessor, or offered by Mr. Sherman. The assessor taxed him four hundred and twenty dollars, on the assumption that he held, in his wife's right, sixty thousand dollars of personal property subject to taxation in the ward, notwithstanding his statement to the contrary. An appeal was therefore made to the board of commissioners. On the appeal, Mr. and Mrs. Sherman submitted their several affidavits. Mrs. Sherman's affidavit states " that she and her said husband have not, in their joint right, nor hath she, in her own right, nor hath her said husband in right of her, his said wife, any estate, real or personal, in said ward; and at the time said assessment was made, she and her said husband had not in their joint right, nor had she in her own right, nor had her said husband in right of her, his said wife, any estate, real or personal, in said ward; and that they had not, when said assessment was made, and have not now, jointly or separately, any property subject to assessment in the right of this deponent." The affirmation of Mr. Sherman is similar in purport.

These affidavits, in the absence of any conflicting testimony, were conclusive. The question of fact to be determined by the commissioners was, whether the appellants had, in the wife's right, any property made ratable by

law and taxable in said ward. The appellants were competent to testify upon the question, and they did so. No other witnesses were examined; though, if the commissioners had known or been informed of any evidence to the contrary, they had power to subpœna witnesses and examine them. *Nix. Dig.* 801, *pl.* 51. It was argued that the affidavits were insufficient, because they only negatived having any property *in the ward,* and that the appellants might have had personal property elsewhere which was liable to taxation in the ward. But the answer to that is, that the affidavits, after denying that they had real or personal estate in the *ward,* concludes with the broad statement that they had not, when said assessment was made, and have not now, jointly or separately, *any property subject to assessment* " in the wife's right." But, then again, it is argued that the affidavits are defective in this, that they do not deny that Mr. Sherman had property in right of his wife, but only that he had no property subject to assessment, and that this was merely testifying to *a conclusion of law.* That the affidavits ought to have disclosed whether the wife had any property at all, and, if any, what it was and where it was, how and by whom held, and every circumstance connected with it, in order that the commissioners might judge whether it was subject to assessment or not.

This, I think, is a mistake. The second section of the city ordinance of February 14th, 1842, concerning assessors, directs the assessor to take a true account, &c., of persons, articles, and things within the city made ratable by the laws of the state; and to this end requires that " every inhabitant of the said city, on application of the said assessor, shall forthwith give a full and true account of their estate, real and personal, *made ratable as aforesaid,* which the assessor shall take down in writing; and in case any of the said inhabitants shall neglect or refuse to give in *such account,* or *any part thereof,* such person shall be rated double the sum at which the assessor may suppose " the value of his ratable property to be. So that all

State v. McClurg.

the assessor has a right to inquire after, and all the citizen is bound to furnish, is an account of his property made ratable by law. It is not said, nor is it inferable from the language used, that the citizen is required to furnish a true and particular account of all his real and personal property, of whatever kind, wherever situate, and however held, whether in trust to his use or otherwise, to the assessor, *in order that such assessor may determine what is ratable and what not.* The ordinance assumes that the citizen is acquainted with the laws, and knows what taxable property he has, and requires him to furnish an account of *that only*, and provides a remedy if he does not truly disclose the truth respecting it.

There is nothing requiring the assessors to demand, or the citizen to disclose, any information in relation to his affairs beyond this. There is no intention manifested to put it in the power of assessors to institute an inquisition into the private affairs of the citizen beyond what is simply requisite to attain the end of a just and equal taxation. The ordinance guards the public against fraud by the power of imposing a double tax upon a supposed amount of property which the assessor may assume the citizen to own, and that must be remitted if the citizen disprove the fact, or will make oath that he has no such property, or no such amount of property in value beyond what he gave in; and if the oath is false, the penalty of perjury is incurred. I am clearly of opinion that the affidavits first laid before the commissioners were sufficient.

But even if these affidavits had been insufficient for the reason assigned, the commissioners erred in refusing to receive the affidavits which were *subsequently* made and offered to them. It appears that when, on the 30th of June, the attorney of the appellants presented these affidavits to the commissioners, he observed that they hesitated to act on them, and he informed them that if there was anything objectionable in the form of the affidavits, and they would indicate what, he would have them

amended at once. No objection was stated. The case laid over until the eighth of July. On the morning of that day, the commissioners resolved to hear no new business. The counsel of Mr. and Mrs. Sherman then asked leave to withdraw the affidavits till afternoon, for amendment, which was refused ; and the commissioners at once took up the case, and resolved that the assessment be sustained. In the afternoon, the commissioners again met. Mr. Sherman was present with his counsel, who presented the second affidavit of Mrs. Sherman, which Mr. Sherman offered to corroborate with his own, in every respect, but the commissioners refused to receive them, on the ground that the case had been determined ; and while the last affidavit was being prepared, they adjourned until evening. These affidavits are full and free from every possible objection. They show that the wife had not in her own right, nor had the husband in her right, any personal property whatever, nor had she or her husband any real estate in her right in the ward. The new affidavits ought to have been received. The commissioners should have been as anxious to know the truth as the appellants were to disclose it, and too anxious to do justice to permit its ends to be defeated by mere technicalities.

The assessment must be set aside.

VREDENBURGH, J., concurred.